**Russell Bourne RASBAND, Plaintiff and Respondent,**

v.

**Carol T. RASBAND, Defendant and Appellant.**

No. 870081–CA.

Court of Appeals of Utah.

April 18, 1988.

David S. Dolowitz (argued), Cohne, Rappaport & Segal, Salt Lake City, for defendant and appellant.

Pete N. Vlahos (argued), Vlahos & Sharp, Ogden, for plaintiff and respondent.

Before DAVIDSON, GREENWOOD and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Carol Rasband's appeal challenges the alimony award, the property division, and the legal fee award in the parties' February, 1987 judgment and decree of divorce. We affirm in part and vacate and remand in part.

The parties were married in 1957, a few months after graduating from high school. Four children were born as issue of the marriage. The youngest child was emancipated two months after entry of the decree; another is an adult incapable of self-support. Mrs. Rasband worked occasionally at low-skilled, minimum wage jobs and did some typing to help Mr. Rasband in his work. He was a manager of insurance agents from 1977 until 1984 when he elected to work as an independent agent.

Their assets and debts were divided about evenly by the trial court. Equality was to be ultimately achieved by sale of the family home within three years (to be used by appellant in the interim), with the net equity divided equally at that time after reimbursement of respondent for paying $9,992 in family debts and payment to him of an additional $5,400. Mr. Rasband was ordered to pay $250 in monthly support for the handicapped adult child, pend-

ing further review of her condition.[1] Mrs. Rasband was awarded automatically-decreasing monthly alimony of $800 for one year, decreasing to $700 for two years, then to $350 for five years, and ending at $1 per year. She requested payment by respondent of $7,970 in legal expenses and was awarded $1,000 of that request.

## ALIMONY

■ This court will not disturb the trial court's award of spousal support absent a showing of a clear and prejudicial abuse of discretion. *Paffel v. Paffel,* 732 P.2d 96, 100 (Utah 1986). In this appeal, Mrs. Rasband asserts that the trial court committed such an abuse in determining the amount of alimony and in providing for its automatic decline. We agree on both of these related points.

■ An alimony award should, to the extent possible, equalize the parties' respective post-divorce living standards and maintain them at a level as close as possible to that standard of living enjoyed during the marriage. *Gardner v. Gardner,* 748 P.2d 1076, 1081 (Utah 1988); *Jones v. Jones,* 700 P.2d 1072, 1075 (Utah 1985). *See also Davis v. Davis,* 749 P.2d 647, 649 (Utah 1988). The Utah Supreme Court has articulated three factors that must be considered by the trial court in determining a reasonable alimony award: (1) the financial conditions and needs of the requesting spouse; (2) the ability of the requesting spouse to produce a sufficient income for himself or herself; and (3) the ability of the other spouse to provide support. *Gardner,* 748 P.2d at 1081; *Olson v. Olson,* 704 P.2d 564, 566 (Utah 1985); *Jones,* 700 P.2d at 1075. Failure to consider these factors constitutes an abuse of the trial court's discretion. *Paffel,* 732 P.2d at 101.

Based on our review of the record, we must conclude that the trial court, in set-ting the first year of support at only $800 per month and in decreasing it to $1 over eight years, failed to consider Mr. Rasband's clear ability to provide support and Mrs. Rasband's severely limited ability to meet her own established financial needs. The parties' thirty-year marriage began as they graduated from high school. Mr. Rasband produces about $7,000 gross income per month; Mrs. Rasband has no income. Their assets consisted of the insurance business, a large home, vehicles and personal property, all acquired through joint efforts. He contributed his income and labor; although Mrs. Rasband has average typing skills, she primarily contributed her unpaid labor. Her homemaking and child-rearing efforts advanced his career pursuits. Both parties are functioning adults with health problems not untypical of persons nearing fifty years of age. The trial court found that Mr. Rasband's net monthly earnings (after business expenses but before taxes) were $3,800 and that his needs were $1,500 per month, "including payment of the family debts." Mrs. Rasband's needs were specifically found to be between $1,250 and $1,400 per month. These findings have not been challenged on appeal.

The disparity between Mr. Rasband's annual net income of $45,600 and her zero income is striking. During the one year of $800 monthly alimony awarded by the trial court, his income would be $36,000 and hers only $9,600. His standard of living will be much nearer that enjoyed during the marriage than will hers. This disparity is augmented by his ability to expense some personal use items through his business and by her additional expense in caring for their adult daughter.

■ The trial court made only one vague, conclusory finding regarding Mrs. Rasband's present and future ability to produce a sufficient income to meet her

---

1. Although the court's order with respect to the adult child was only "temporary" until the court received an evaluation of her condition by Davis County Mental Health, the record contains no such report or any ruling or further order of the court modifying or terminating this provision of the decree, which neither party has objected to on appeal.

needs, i.e., that she is "capable of meaningful employment in the future." It is this finding that apparently formed the basis for the court's determination of the amount and the nonpermanence of the alimony awarded. However, as the Utah Supreme Court has recently pointed out,

> [t]he findings of fact must show that the court's judgment or decree "follows logically from, and is supported by, the evidence." *Smith v. Smith*, 726 P.2d 423, 426 (Utah 1986). The findings "should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached."

*Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987) (quoting *Rucker v. Dalton*, 598 P.2d 1336, 1338 (Utah 1979)). *See also Parks v. Zions First Nat'l Bank*, 673 P.2d 590, 601 (Utah 1983) (findings of fact must clearly indicate the mind of the court).[2]

Mr. Rasband is clearly capable of paying support sufficient to meet Mrs. Rasband's entire determined living expense need, now and in the future, if she is unable to do so on her own. Detailed findings regarding her earning capacity are critically important to this reviewing court since the record evidence indicates that appellant's present and future earning capacity is minimal. She had no earnings in the year before trial; she has only a high school education and average job skills to market.

Her ability to work is impaired by the disability of their adult daughter. She will have difficulty finding and retaining a full-time job. If employed, her earnings would undoubtedly be meager for a long period, given her lack of education, training or work experience.[3]

The facts and the trial court disposition in this case are very similar to those in *Jones*, where the alimony award decreased from $1,000 to $500 over ten years. The parties were married for thirty years, raised four children, built a retail pharmacy business, and enjoyed a comfortable lifestyle. The tangible assets were divided, but Mr. Jones received the income-producing business. Mrs. Jones had no outside income and no income-producing assets. She was awarded a home, but had to pay the home mortgage, probably necessitating its sale. She was 52, had no professional training and limited marketable skills. The court said it was unrealistic to assume that she would be able to enter the job market and support herself in the style they had enjoyed. The incorporated business generated profits of about $90,000 annually but the husband drew only $45,000 salary, thereby providing the husband with additional discretionary income in the business. As the Utah Supreme Court concluded:

> This is simply not the sort of situation in which a decreasing rehabilitative alimony award is appropriate. The husband oper-

---

**2.** The decree attributes present and future work and income to Mrs. Rasband with which she is expected to provide ongoing support for herself and her adult daughter. The court, however, made no specific earning capacity finding, i.e., a dollar amount the trial court believes she is capable of earning monthly. She needs such a "baseline" in order to seek a modification of alimony in the future by showing a substantial *change* in circumstances if, in fact, she does not or cannot obtain work providing that level of income. *See Higley v. Higley*, 676 P.2d 379, 382 n. 1 (Utah 1983). On the other hand, without such a specific finding, any income she does earn from employment will show improved circumstances on her part, supporting a request by respondent to lower his alimony obligation. She should not be thus penalized, at least until her earnings exceed the baseline amount the trial court contemplated she could and would make when the decree was entered. *See Can-*

*ning v. Canning*, 744 P.2d 325, 327 (Utah App. 1987).

It is obvious that many circumstances of the parties could change materially in eight years or less. Accordingly, we think decreasing alimony —based on speculation about a future ability to earn—is generally inappropriate in view of the court's continuing jurisdiction to modify an original decree under Utah Code Ann. § 30–3–5 (1987).

**3.** Even if she secured full-time employment at the federal minimum wage, Mrs. Rasband would only earn a gross income of $134 per week, approximately $536 per month. After taxes are taken out, these earnings plus the alimony awarded by the trial court do not even meet her basic monthly needs of $1,250–$1,400.

ates a financially successful business, built up over the course of the marriage through the joint efforts of both the husband and the wife. These facts clearly call for some form of continuing spousal maintenance.

*Jones,* 700 P.2d at 1076.

Although Mr. Rasband does not have the amount of discretionary income Mr. Jones did, the award herein leaves Mr. Rasband with some discretionary income and Mrs. Rasband with none. The lower court found $45,000 of disposable income. He needs $18,000 annually and she needs $16,800, for a total of $34,800. This leaves him with $10,000 annual discretionary income, in addition to the advantage he enjoys by being able to expense some personal living expenses through the business. These facts appear to warrant permanent alimony in a monthly amount greater than $800.

■ Under these circumstances, the amount of nonpermanent, declining alimony awarded to Carol Rasband creates a situation comparable to the meager award in *Higley v. Higley,* 676 P.2d 379 (Utah 1983), and the non-award in *Canning v. Canning,* 744 P.2d 325 (Utah App.1987). When this is coupled with the lack of adequate findings regarding her current and future ability to produce an income that—together with alimony—will meet her monthly need of $1,250–$1,400, the trial court's award is a clear and prejudicial abuse of discretion.

Although this court has the power to modify the amount of alimony awarded in the decree, the lack of proper findings prevents us from doing so. *See Higley,* 676 P.2d at 382; *Canning,* 744 P.2d at 327. We thus vacate the portion of the judgment below that sets the amounts and duration

of the decreasing alimony award and remand for adequate findings[4] by the trial court and entry of new judgment and decree provisions awarding permanent alimony.

### PROPERTY DISTRIBUTION

■ The trial court in a divorce action has considerable discretion in equitably adjusting the financial and property interests of the parties. *Argyle v. Argyle,* 688 P.2d 468, 470 (Utah 1984); *Lee v. Lee,* 744 P.2d 1378, 1380 (Utah App.1987). Because the court's distribution of property is endowed with a presumption of validity, *Pusey v. Pusey,* 728 P.2d 117, 119 (Utah 1986), we will not disturb it on appeal unless it is clearly unjust or a clear abuse of discretion. *Gardner,* 748 P.2d at 1078; *Smith v. Smith,* 78 Utah Adv.Rep. 39 (Ct.App.1988).

Mrs. Rasband avers that, although the trial court divided the property equally, equal is not equitable in this case. She claims an equitable award would give her, as a "basic minimum," the home *in toto,* as well as the fixtures, furnishings and appliances.

The underlying premise of her argument is that Mr. Rasband has acquired during marriage specific, intangible personal property assets not valued by the court, i.e., business acumen, contacts and knowledge. She asserts his intangible knowledge and experience have considerably more value than $10,000. She, on the other hand, has not acquired any comparable income-producing assets. She claims an award of all of the parties' tangible assets, instead of only half, would equitably offset the intangible assets that he has acquired.

The parties, however, had also acquired $37,866 of tangible business debts, which

---

4. *See Higley,* 676 P.2d at 382:

On remand, the trial court must consider whether the appellant has the ability to earn enough to supplement the permanent alimony award to a level consistent with the guidelines set forth by this Court for determining a reasonable alimony award. If the trial court finds that the appellant does not have this

ability, then it should modify its award of permanent alimony accordingly. If the trial court believes that the appellant does have this ability, then it should make such a finding of fact. Absent a finding regarding the appellant's ability to work, the appellant would be precluded in the future from asking the court to modify her alimony award based on changed circumstances if she can show in the future that she is unable to work.

the court ordered Mr. Rasband to pay, after finding that the value of the income potential of the business was offset by those debts. Appellant also overlooks the court's finding that she withdrew $8,500 from family bank accounts in mid–1985, only some of which was used for family expenses; she did not account for the rest. In addition, Mr. Rasband contributed an inheritance (amount unknown) from his parents that was comingled with family funds and used to pay family expenses or to set up savings accounts.

■ On these facts, we cannot say the trial court clearly abused its discretion in distributing the parties' assets and obligations.

## ATTORNEY FEES

Counsel for Mrs. Rasband made a proffer at trial concerning her $7,970 bill for his legal services, identifying himself as a family law specialist and a fellow of the American Academy of Matrimonial Lawyers. Counsel's documented time was billed at $125 per hour; his legal assistant's documented time was billed at $40 per hour.[5] He stated that he had attended two pretrial hearings and that the hours spent on this case were reasonable in light of two extraordinary factors: (1) the adult child's disability and its effect on respondent's support obligation; and (2) investigation of the possible hiding of respondent's actual income by charging off personal expenses as business expenses.

Counsel for Mr. Rasband objected to the amount of hours proffered as being unreasonable and unnecessary. The court agreed, concluding that the case was not difficult from a legal, factual, or discovery standpoint and fixing a reasonable fee at $3,500. Mrs. Rasband had already paid

$2,500 from monies acquired during the marriage. Mr. Rasband was ordered to pay the $1,000 balance. Although the basis for appellant's challenge to this award has not been clearly articulated, she apparently claims that the trial court abused its discretion in determining that $3,500 represented a reasonable attorney fee in light of the complexity of this case.

■ A trial court has the power to award attorney fees in divorce proceedings, pursuant to Utah Code Ann. § 30–3–3 (1984). *Kerr v. Kerr,* 610 P.2d 1380, 1384 (Utah 1980). The decision to make such an award and the amount thereof rest primarily in the sound discretion of the trial court. *Id.* However, the award must be based on evidence of both financial need and reasonableness. *Beals v. Beals,* 682 P.2d 862, 864 (Utah 1984).

Reasonable attorneys fees are not measured by what an attorney actually bills, nor is the number of hours spent on the case determinative in computing fees. In determining the reasonableness of attorneys fees, … [a] court may consider, among other factors, the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved.

*Cabrera v. Cottrell,* 694 P.2d 622, 624–25 (Utah 1985). *See also Beals,* 682 P.2d at 864.

■ In light of the relevant factors and the circumstances of this case, we find no abuse of discretion in the court's determination and award of the attorney fee.

The judgment of the trial court is affirmed, except for the provisions related to

---

5. Appellant's counsel advised the trial court that his assistant was present at trial to help him with witness and exhibit management. The court advised counsel that it did not intend to allow him to receive credit for that work, since that was precisely the bailiff's job. There is nothing in the record to suggest that the court categorically refused to consider the pre-trial work performed by the legal assistant in determining the reasonable attorney fee in this case. Because of this, we need not reach the issue of whether a trial court must take into account the time expended by counsel's legal assistant in determining a reasonable attorney fee.

the decreasing alimony award. Those portions of the judgment are vacated and the case remanded for requisite findings of fact pertaining to appellant's earning capacity, based on the evidence presented at trial, that adequately support new judgment and decree provisions covering only the amount of permanent alimony to be awarded her. Costs to appellant. On remand, the trial court should also determine appellant's need for respondent's payment of her attorney fees incurred in this appeal. If that financial need is adequately shown, the trial court may take evidence regarding a reasonable fee and make such an order pursuant to Utah Code Ann. § 30–3–3

(1984). *See Heltman v. Heltman,* 29 Utah 2d 444, 511 P.2d 720 (1973).

DAVIDSON and GREENWOOD, JJ., concur.